## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**JOHN MARSHALL UNDERWOOD, JR.,**

      **Movant,**

**v.**                                                     **Case No. 2:18-cv-00671**
                                              **Criminal Case No. 2:17-cr-00029**

**UNITED STATES OF AMERICA**

      **Respondent.**


### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Movant's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECF No. 64); Respondent's Response, seeking denial of the motion and dismissal of this civil action, (ECF No. 83); and Movant's reply memorandum, (ECF No. 86). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having determined from a thorough review of the record that Movant clearly is not entitled to relief under 28 U.S.C. § 2255, the undersigned **FINDS** no basis for an evidentiary hearing and respectfully **RECOMMENDS** that the presiding District Judge **DENY** Movant's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255; **GRANT** Respondent's request for dismissal; **DISMISS** this civil action, with prejudice; and **REMOVE** this matter from the docket of the Court.

## I.    **Factual and Procedural Background**

In 2016, Movant John Marshall Underwood, Jr., ("Underwood") was a self-employed tractor-trailer driver operating out of West Virginia. When making long hauls, Underwood liked to engage in "sexual conversations and role playing" with women he found on the internet and to "frequent the services of adult women at the truck stop or on Craigslist or Backpage." (ECF No. 65 at 4). In December 2016, law enforcement officers received information from a confidential informant that Underwood was soliciting prostitutes to assist him in locating minor females with whom he could engage in sexual activity. (ECF No. 82-2 at 9).

Acting on this information, Sergeant T. M. Divita of the West Virginia State Police placed a recorded telephone call to Underwood on December 14, 2016. (*Id*). Divita identified herself as "Jenn," a prostitute living in Charleston, West Virginia. Jenn advised Underwood that she had received his telephone number from another prostitute. (*Id*.). Thereafter, Jenn and Underwood engaged in a series of calls and text messages, during which Jenn told Underwood about her thirteen-year-old niece, Abby. (*Id*.). Underwood expressed interest in meeting and having sex with Abby and requested photographs of her in the nude. (*Id*. at 10-11). On December 23, 2016, Underwood sent a picture of his penis to Jenn ostensibly to share with Abby. (*Id*. at 11).

In January 2017, Underwood began speaking directly with Abby, who, unbeknownst to Underwood, was an undercover police officer. (ECF No. 82-2 at 11). During these conversations, Underwood asked Abby about her sexual experiences, discussed being "friends with benefits," requested photographs, and told her that he wanted to take care of her. Underwood also spoke with Jenn about arranging a visit with Abby. (ECF No. 82-3 at 1-3). Jenn and Underwood eventually agreed that Jenn and Abby

2

would "hang out" with Underwood on February 2, 2017 at a tire store in Kanawha County, West Virginia. (ECF No. 82-3 at 3). When Underwood arrived at the designated meeting place, West Virginia State Police arrested him.

After receiving his Miranda rights, Underwood admitted to the investigating officers that he found underage girls attractive and enjoyed thinking about having sexual intercourse with them. (ECF No. 82-3 at 4). Underwood's phones were confiscated for forensic examination and revealed incriminating text messages. Underwood was subsequently charged in federal court with using a facility and means of interstate commerce—namely, a cellular telephone—to attempt to persuade, induce, entice, or coerce a minor to engage in sexual activity. The contents of the cellular telephones corroborated the charge, demonstrating Underwood's desire to provide money and items of value in exchange for sexual contact with Abby. (ECF No. 82-3 at 4-5; ECF No. 74 at 4).

During the discovery phase of the case, the United States produced 10,993 pages of communications obtained from Underwood's cellular telephones, which included numerous text messages between Underwood and prostitutes. (ECF No. 82-3 at 4-5). The telephones showed that on multiple occasions, Underwood inquired about sexual activity with underage girls. (*Id.*). In at least one series of text messages with a female from West Virginia, Underwood expressed his interest in having sexual intercourse with a twelve-year-old girl, who had run away from home and was living with Underwood's female contact. (*Id.* at 5). Underwood also repeatedly asked for nude photographs of the child. (*Id.*).

On June 9, 2017, Underwood entered into a written agreement with the United States in which Underwood agreed to plead guilty to the indictment in exchange for two concessions by the United States. (ECF Nos. 49, 74-1). First, the United States would not

oppose a downward variance from the applicable sentence range under the United States Sentencing Guidelines ("USSG"), as long as the sentence did not fall below the mandatory statutory minimum of ten-years' imprisonment. (ECF No. 49). Second, the United States agreed to abandon a superseding indictment, which charged Underwood with three offenses in addition to the enticement offense; specifically, two counts of attempted production of child pornography and one count of transferring obscene material. (ECF Nos. 74, 74-1).

Underwood's plea hearing was held on June 20, 2017 before the United States District Court for the Southern District of West Virginia (the "Sentencing Court"). Upon questioning by the Sentencing Court, Underwood stated that he understood the indictment and the plea agreement and had discussed the matters with his attorney. (ECF No. 62 at 6-10). The plea agreement contained a stipulation of facts comprising the offense of conviction. (*Id.* at 15). In the stipulation, Underwood acknowledged that he used cellular telephones and wireless internet to communicate with Jenn, whom Underwood believed was a prostitute, with the intent of persuading, enticing, and inducing Jenn's thirteen-year-old niece, Abby, to engage in commercial sexual activity. (*Id.* at 15-17). Underwood further admitted that he arranged to meet with Jenn and Abby in Kanawha County, West Virginia, on the day of his arrest. (*Id.*).

After reviewing with Underwood the remaining contents of the plea agreement, the Sentencing Court asked Underwood if he understood the entire agreement and if he approved of it. (ECF No. 62 at 24). Underwood answered in the affirmative. (*Id.*). Underwood further confirmed that he had entered into the plea agreement of his own volition and had not been promised anything other than what was expressly written in the agreement.

4

When asked to state in his own words what he had done to merit a conviction, Underwood faltered somewhat. (*Id.* at 35-36). Consequently, the Sentencing Court advised Underwood that he should not enter a guilty plea if he was not, in fact, guilty of the offense charged. (*Id.* at 36). After conferring with counsel, Underwood stated that he offered Jenn money to engage in sexual activity with her thirteen-year-old niece. (*Id.* at 37). In response to additional questioning by the Sentencing Court, Underwood admitted all of the essential elements of the offense of conviction. Therefore, the Sentencing Court accepted Underwood's guilty plea, finding both a factual and a legal basis for the plea. (ECF No. 62 at 45).

On September 20, 2017, Underwood's sentencing hearing was held. (ECF No. 63). Underwood acknowledged on the record that he had reviewed the Presentence Report ("PSR") and understood its contents. (*Id.* at 2-3). Underwood's counsel, Assistant Federal Public Defender Rhett Johnson ("Johnson"), raised various objections to portions of the PSR, which were resolved by the Sentencing Court. The Sentencing Court then calculated Underwood's sentence under the USSG, determining that his total offense level and criminal history category resulted in a sentence of imprisonment ranging from 188 to 235 months, with a mandatory minimum sentence of ten years in prison. (*Id.* at 37-38). After considering all of the relevant factors, the Sentencing Court concluded that a downward variance of the USSG sentence range was merited. Accordingly, Underwood was sentenced to the mandatory minimum sentence permitted by statute; that being, ten years in prison. (*Id.* at 47-48).

Underwood did not appeal his conviction or sentence, but on April 26, 2018, filed the instant motion under § 2255. (ECF No. 64). In the motion and accompanying memorandum, Underwood argues that he received ineffective assistance of counsel when

5

Johnson failed to file a motion to dismiss the indictment and failed to advise Underwood that he should proceed to trial given the strength of his defense. (ECF No. 65 at 1). Both of Underwood's claims of ineffective assistance of counsel rest on his belief that the United States was not able to prove the offense of conviction for the following three reasons: (1) Abby's apparent acquiescence to sexual activity precluded a claim that Underwood enticed, persuaded, induced, or coerced Abby to have sex; (2) there was no evidence that Underwood intended to engage in sexual activity with Abby; and (3) the government's "sting operation" constituted entrapment as a matter of law. (ECF No. 65 at 13).

On May 4, 2018, the Court ordered Johnson to file an affidavit responding to Underwood's claim of ineffective assistance of counsel. (ECF No. 73). Johnson submitted his affidavit on June 1, 2018. (ECF No. 74). Johnson states in the affidavit that after being assigned to Underwood's defense, Johnson thoroughly reviewed the voluminous discovery produced by the United States and engaged in extensive legal research regarding enticement offenses. (*Id.* at 3-4). After performing these tasks, Johnson concluded that Underwood should proceed to trial. This conclusion was not based on the strength of the defense, but rather on Johnson's belief that if Underwood lost at trial, the Court would not impose a sentence longer than the mandatory minimum, because Underwood had a strong employment history and no criminal record. (*Id.* at 4). Johnson explains: "In other words, even considering the slim chances of prevailing at trial, I felt and expressed to Mr. Underwood and his family that he had nothing to lose by holding the government to its burden at trial." (*Id.*)

However, prior to trial, Johnson received a proposed plea agreement from the Assistant United States Attorney, along with a warning that if Underwood did not agree

6

to the plea deal, the United States would seek a superseding indictment against him that would include three additional counts. (ECF No. 74 at 4-5). Two of the counts would charge Underwood with the attempted production of child pornography, which each carried statutorily mandated minimum sentences of fifteen-years' imprisonment. Given the potential that Underwood could receive a significantly longer sentence, Johnson felt that the risk in proceeding to trial on a superseding indictment was too great. Therefore, Johnson advised Underwood that he should consider signing the plea agreement. (*Id*. at 5).

With respect to Underwood's arguments regarding ineffective assistance of counsel, Johnson indicated that there was no valid legal basis upon which to challenge the indictment. In regard to the three reasons that Underwood asserted for proceeding to trial, Johnson responded that none of the proposed defenses were likely to be successful in light of the law and the evidence. (ECF No. 74 at 6). Johnson attached documentation to his affidavit supporting his statements. (ECF Nos. 74-1, 74-2).

After receiving the affidavit, the Court ordered the United States to respond to the habeas petition and provided Underwood with a deadline for his reply. (ECF No. 78). On October 15, 2018, the United States filed its response in opposition to the § 2255 motion. (ECF No. 83). In the response, the United States argues that Underwood has not established ineffective assistance of counsel, because he cannot demonstrate that Johnson's representation was deficient, nor show prejudice from Johnson's advice to plead guilty. The United States contends that Johnson was not ineffective for failing to challenge the indictment, because the indictment clearly fulfilled the only two requisites of a valid charging document: (1) that it state the elements of the offense; and (2) that it fairly inform the defendant of the exact charges against him. (*Id*. at 10). The United States

7

also disputes the merits of the three defenses asserted by Underwood, which he claims would have precluded a guilty verdict in his case. (ECF No. 83 at 12-16).

Underwood timely filed a reply to the United States' opposition memorandum. (ECF No. 86). In the reply, Underwood reiterates the grounds set forth in his § 2255 motion and contests the arguments advanced by the United States. Underwood contends that he is innocent of the enticement charge and had "very strong legal and evidentiary defenses to the instant offense or any related offenses." (*Id.* at 10-11).

## II.   <u>Standard of Review</u>

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02CR65, Civ.A. 2:05CV91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006).

Pursuant to the Rules Governing Section 2255 Proceedings for the United States District Courts ("Rules"), the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, & 7. "[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of

without further investigation by the District Court." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013). Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a). If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

## III.   Discussion

### A. Ineffective Assistance of Counsel

As indicated, Underwood's claims are based on alleged instances of constitutionally deficient performance by his attorney. These claims assert violations of the Sixth Amendment to the United States Constitution, which guarantees every criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 680 (1984). Under *Strickland,* a criminal defendant can prove ineffective assistance of counsel by satisfying both prongs of a two-pronged test. *Id.* at 687. The defendant carries the burden of proof, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994).

Under the first prong of the test, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687-88. When evaluating counsel's performance under the first prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689. The "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

9

(internal quotation marks omitted). Counsel's performance should be assessed with "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins v. Smith,* 539 U.S. 510, 523 (2003). A counsel's trial strategy devised after investigating the law and facts is "virtually unchallengeable." *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995). Moreover, the reviewing court should not allow hindsight to alter its assessment of counsel's performance. *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."). Put simply, the inquiry under *Strickland* is "whether an attorney's representation amounted to **incompetence** under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 562 U.S. 86, 88 (2011) (emphasis added).

For the second prong, the defendant must show that he was actually prejudiced by the ineffective assistance of counsel. *Strickland,* 466 U.S. at 687. To establish actual prejudice in the context of a guilty plea, a "petitioner must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The petitioner's "subjective preferences ... are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012). In order to demonstrate prejudice, therefore, a petitioner "must convince [the court] that the decision to go to trial 'would have been rational under the circumstances.'" *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

The standard for determining whether a guilty plea is constitutionally valid is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970). When considering this standard, courts should look to the totality of the circumstances surrounding the guilty plea. *Burket*, 208 F.3d at 190. Where a petitioner "alleges that ineffective assistance of counsel caused the guilty plea itself to be unknowing or involuntary, analysis of such claims must be part of the court's inquiry into the validity of the guilty plea." *United States v. Holbrook*, 613 F. Supp. 2d 745, 761 (W.D. Va. 2009); *see also Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1296 (4th Cir. 1992) ("A guilty plea does not bar collateral review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the guilty plea."). However, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005).

### B.  The Validity of Underwood's Three Defenses to the Indictment

Underwood's § 2255 motion largely rises or falls on the validity of the three defenses he claims were absolutely fatal to the viability of the charge against him. For the reasons that follow, the undersigned **FINDS** that none of Underwood's three defenses has merit.

### 1.  Minor's Pre-existing Consent to Sexual Activity Does Not Presuppose an Element of the Offense Charged

Underwood correctly asserts that the crime with which he was charged includes,

as an essential element, that the defendant attempt to "persuade, induce, entice, or coerce" a minor to engage in illegal sexual activity. *See* 18 U.S.C. § 2422(b); *also United States v. Fugit,* 703 F.3d 248, 254 (4th Cir. 2012). According to Underwood, because Jenn offered him the opportunity to have sex with Abby, "[t]his presupposed the fictitious Abby's willingness to engage in sexual activity and no persuasion of any sort was necessary." (ECF No. 86 at 8). Underwood argues that "when a government's sting operation presupposes an essential element [of the governing criminal statute] ... he cannot be convicted of violating said statute." (*Id*. at 7).

Underwood's contention is without merit, because he fails to appreciate two fundamental principles present in this case. First, "[b]y definition, the victim in a sexual exploitation of a minor case is a minor. A minor cannot consent to being sexually exploited." *United States v. Totoro*, No. CR 15-291, 2017 WL 3189216, at *12 (E.D. Pa. July 27, 2017) (citing *United States v. Remoi*, 404 F.3d 789, 795 (3d Cir. 2005)); *also United States v. Kaye*, 451 F. Supp. 2d 775, 784 (E.D. Va. 2006) (holding that "[n]o degree of interest, curiosity, or mutual enticement from a thirteen-year-old" is enough to find that a defendant's advances were not "an attempt to persuade, induce, and entice the individual to engage in sexual activity."); *United States v. Dhingra,* 371 F.3d 557, 567 (9th Cir. 2004) ("The victim's willingness to engage in sexual activity is irrelevant, in much the same way that a minor's consent to sexual activity does not mitigate the offense of statutory rape or child molestation."). Underwood knew that Abby was a thirteen-year-old child. In the State of West Virginia, a thirteen-year-old child is legally incapable of consenting to sexual activity. W. Va. Code § 61-8B-2 (2012) (providing that a person is deemed incapable of consent to a sexual act when the person is "[l]ess than sixteen years old."). Given Abby's age and inability to consent, the government sting could not have

"presupposed" an element of the offense charged.

Second, the focus of a criminal statute, such as 18 U.S.C. § 2422(b), is on the actions *of the defendant*, not on the actions of the minor victim. *See United States v. Myers*, 575 F.3d 801, 809 (8th Cir. 2009) (holding that a minor's willingness to engage in sex acts "does not vitiate" the defendant's attempted enticement.). To persuade, induce, entice, or coerce under § 2422(b), Underwood must only have intended to lead or move Abby "by persuasion or influence" to engage in sexual activity with him. *See United States v. Clarke,* 842 F.3d 288, 296-97 (4th Cir. 2016). The statute "criminalizes an intentional attempt to achieve a mental state—a minor's assent—regardless of the accused intentions concerning the actual consummation of sexual activity with the minor." *United States v. Engle,* 676 F.3d 405, 419 (4th Cir. 2012) (quoting *United States v. Berk*, 652 F.3d 132, 140 (1st Cir. 2011)). "The primary evil that Congress meant to avert by enacting § 2422(b) was the psychological sexualization of children." *Fugit,* 703 F.3d at 255.

In the instant action, Underwood was charged with attempting to induce or entice a minor to engage in sexual activity with him. As the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has explained:

> An attempt to commit a crime, which is recognized as a crime distinct from the crime intended by the attempt, punishes conduct that puts in motion events that would, from the defendant's point of view, result in the commission of a crime but for some intervening circumstance. The mere intent to violate a federal criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct. Therefore, in order to convict a defendant of attempt, the government must prove beyond a reasonable doubt, that (1) he had culpable intent to commit the crime and (2) he took a substantial step towards completion of the crime that strongly corroborates that intent. The government may meet its burden of proof by using direct or circumstantial evidence. Factual impossibility is not a defense to a charge of attempt.

*Engle,* 676 F.3d at 419-20 (citations and markings omitted). Furthermore, with an

enticement charge, a defendant "can violate the statute solely through communications with an adult where defendant directs his inducements to a child." *United States v. Olvera*, 687 F.3d 645, 647 (5th Cir. 2012).

Here, the United States possessed thousands of pages of communications between Underwood and Jenn or Abby in which Underwood discussed sexual activity with Abby, requested nude photographs of Abby, and sought to engage in three-way sex with Abby and a friend of hers. (ECF Nos. 82-2 at 10-11, 82-3 at 1-3). When conversing with just Abby, Underwood asked for details about Abby's sexual experience, discussed being her boyfriend, offered to provide her with money and take care of her, and wanted to know her interest in being "friends with benefits." (*Id.*). In conversations with Jenn, Underwood discussed the parameters of the sexual activity in which he could engage with Abby and made plans with Jenn to meet her and Abby at a specified location in Kanawha County, West Virginia, to "hang out." Clearly, Underwood's actions constitute substantial steps toward achieving his goal of inducing thirteen-year-old Abby to engage in sexual activity with him. *See United States v. Howard,* 766 F.3d 414, 421 (5th Cir. 2014) ("Travel to a meeting place is ... sufficient to establish" an attempt to induce or persuade a child to have illegal sexual contact); *United States v. Kokayi*, No. 1:18-CR-410 (LMB), 2019 WL 2028517, at *3 (E.D. Va. May 8, 2019) (The "prohibited act of persuasion can occur over a distance, as the statute expressly contemplates, and logic would appear to dictate that having discussions with [minors] about meeting to have sex is a substantial step towards persuading them to have sex.") (quoting *United States v. Broussard*, 669 F.3d 537, 550 (5th Cir. 2012)); *United States v. McMillan,* 744 F.3d 1033, 1037 (7th Cir. 2014) (holding that the defendant took substantial steps to violate § 2422 when he offered to send a picture of his penis to a minor's parent to share with the minor, asked to speak with the

minor, and inquired if the parent had spoken to the minor about discussions regarding the defendant having sex with the minor).

### 2. Evidence Exists that Underwood Intended to Engage in Illegal Sexual Activity with Abby

Underwood claims that the United States had no evidence of Underwood's intent to engage in sexual activity with Abby. In Underwood's view, while "he may have engaged in inappropriate banter at times, he never crossed the line where he knowingly intentionally attempted to [persuade, induce, entice, or coerce] Abby to engage in 'illegal sexual activity.'" (ECF No. 86 at 8). Contrary to Underwood's description of his behavior as "inappropriate banter," the evidence, as set forth above, strongly supported a charge under § 2422(b).

To obtain a conviction under § 2422(b), the United States was not required to prove Underwood's intent to engage in sexual activity with Abby. Instead, "a conviction under § 2422(b) requires a finding only of an attempt to entice or an intent to entice, and not an intent to perform the sexual act following the persuasion." *United States v. Brand,* 467 F.3d 179, 202 (2d Cir. 2006); *see also United States v. Thomas,* 410 F.3d 1235, 1246 (10th Cir. 2005) (holding that the defendant "crossed the line from 'harmless banter' to inducement the moment he began making arrangements to meet [the minor], notwithstanding the lack of evidence that he traveled to the supposed meeting place."); *United States v. Murrell,* 368 F.3d 1283, 1286 (11th Cir. 2004) ("The underlying criminal conduct that Congress expressly proscribed in passing § 2422(b) is the persuasion, inducement, enticement, or coercion of the minor rather than the sex act itself. That is, if a person *persuaded* a minor to engage in sexual conduct (e.g. with himself or a third party), without then actually committing any sex act himself, he would nevertheless

violate § 2422(b).") (emphasis in original) (internal footnotes omitted); *United States v. Bailey,* 228 F.3d 637, 639 (6th Cir. 2000) ("While it may be rare for there to be a separation between the intent to persuade and the follow-up intent to perform the act after persuasion, they are two clearly separate and different intents and the Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves. Hence, a conviction under the statute only requires a finding that the defendant had an intent to persuade or to attempt to persuade.").

The sexual abuse of minors "can be accomplished by several means and is often carried out through a period of grooming. Grooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhabitations in order to prepare the child for sexual activity." *Engle,* 676 F.3d at 412 (citations omitted). In this case, Underwood did more than simply engage in "inappropriate banter." He sent a picture of his penis to Jenn to share with Abby; he asked to speak with Abby in private in order to discuss her sexual experience, her feelings about oral sex, and her desire to be "friends with benefits." By steering his communications with Abby to the possibility of her having sexual contact with him in exchange for money, Underwood unequivocally "intended to cause assent on the part of the minor," even if he had no specific intent to engage in sexual activity with her. *United States v. Cramer,* --- Fed. Appx. ---, 2019 WL 4885897, at *1 (8th Cir. Oct. 3, 2019). Thereafter, Underwood arranged to meet with Jenn and Abby and drove to the designated location, undoubtedly with the intent of furthering his relationship with Abby. Accordingly, there is no merit to this defense.

In addition, the United States possessed text messages written by Underwood to various prostitutes, inquiring about the availability of other young girls. (ECF No. 82-3 at 4). From one contact in West Virginia, named Kc, Underwood solicited photographs of a twelve-year old runaway who was living with Kc. Underwood agreed to pay Kc if she would coordinate Underwood's sexual activity with the child. Underwood and Kc discussed arranging a visit between Underwood and the runaway, while also acknowledging that they could get in trouble if caught. (*Id.* at 5). Consequently, Underwood's pattern of behavior, both before and during his communications with Jenn and Abby, demonstrates a well-defined intent to have sexual intercourse with a minor. *United States v. Schaffer,* 851 F.3d 166, 183 (2d Cir. 2017) (holding that evidence tending to show that a defendant was sexually interested in underage girls was probative because "it [made] it more likely" that the defendant was sexually interested in the fifteen-year-old victim.). Underwood's communications involving other minors, which were similar to his contacts with Jenn and Abby, clearly demonstrate a pattern of behavior involving the sexual exploitation of minors. *United States v. Fugit,* 296 F. App'x 311, 313 (4th Cir. 2008).

### 3. Entrapment was not a Viable Defense

Underwood argues that his entrapment defense was "very strong," because law enforcement initiated contact with Underwood and offered Abby for sexual activity. In addition, he states that he refused to have sexual contact with Abby on multiple occasions despite the government's repeated offers. Underwood asserts that the United States would not have been able to demonstrate that he was predisposed to commit the crime of attempted enticement of a minor to engage in illegal sexual activity.

"Entrapment is an affirmative defense consisting of 'two related elements: government inducement of the crime, and a lack of predisposition on the part of the

defendant to engage in the criminal conduct.'" *United States v. Brown*, 681 F. App'x 268, 269–70 (4th Cir. 2017) (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)). Inducement requires more than mere solicitation on the part of the government. *United States v. Hsu*, 364 F.3d 192, 198 (4th Cir. 2004); also *United States v. Harrison,* 37 F.3d 133, 136 (4th Cir. 1994) ("[W]hen government agents merely offer an opportunity to commit the crime and the defendant promptly avails himself of that opportunity, an entrapment instruction is not warranted."). Instead, the government's conduct must be "sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." *United States v. Daniel*, 3 F.3d 775, 778 (4th Cir. 1993).

"To establish entrapment, a defendant must first demonstrate the government induced him to engage in the criminal activity." *United States v. Young*, 916 F.3d 368, 375 (4th Cir. 2019) (citing *United States v. McLaurin*, 764 F.3d 372, 380 (4th Cir. 2014)). "Once the defendant has shown government inducement, the burden shifts to the government to prove beyond a reasonable doubt the defendant's predisposition to have engaged in the criminal conduct." *Id.* at 375-76 (citing *United States v. Jones*, 976 F.2d 176, 179 (4th Cir. 1992)). As the Fourth Circuit explained in *Young,* "[p]redisposition focuses upon whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime." *Id.* at 376 (quoting *Mathews,* 485 U.S. at 63).

Here, the only reason Sergeant Divita contacted Underwood in the first place was because the West Virginia State Police received a tip that he was soliciting prostitutes to find underage girls willing to have sexual intercourse with him. (ECF No. 82-2 at 9). Even if Jenn, Sergeant Divita's undercover alias, offered to prostitute her thirteen-year-old niece, Abby, those offers constituted nothing more than mere solicitation. Underwood

certainly could have ended his contacts with Jenn when she first suggested sexual activity between Underwood and Abby; but instead, Underwood continued to communicate with Jenn and ultimately began speaking directly to Abby. When he spoke with Abby, he inquired about her sexual experiences and expressed a desire to be her boyfriend and take care of her. (ECF No. 82-2 at 11; ECF No. 82-3 at 1-3).

The evidence collected from Underwood's phones unequivocally establishes that Underwood was predisposed to commit the crime for which he was convicted. He was trolling for children before the government ever got involved with him, and he communicated with individuals, who were not connected to the government, in an effort to achieve his goal of having sexual intercourse with a child. He requested nude photographs of Abby and other young girls and sent a picture of his penis to Jenn to share with Abby. Underwood's desires were plainly expressed and his intentions were unambiguous. Consequently, his defense of entrapment was destined to fail.

### C. Counsel's Failure to Move for Dismissal of the Indictment

Underwood contends that Johnson should have moved to dismiss the indictment, because the United States clearly could not have proven the charge against him. "A motion to dismiss an indictment tests whether the indictment sufficiently charges the offense the defendant is accused of committing." *United States v. Vanderhorst,* 2 F. Supp. 3d 792, 794 (D.S.C. 2014) (citing *United States v. Brandon,* 150 F. Supp. 2d 883, 884 (E.D.Va.2001), *aff'd,* 298 F.3d 307 (4th Cir. 2002)). The sufficiency of an indictment is judged by it compliance with Federal Rule of Criminal Procedure 7(c)(1), which requires the indictment to contain "a plain, concise and definite written statement of the essential facts constituting the offense charged." Thus, an indictment is sufficient if "(1) it alleges the essential elements of the offense, that is, it fairly informs the accused of what he is to

19

defend; and (2) if the allegations will enable the accused to plead an acquittal or conviction to bar a future prosecution for the same offense." *United States v. Rendelman*, 641 F.3d 36, 44 (4th Cir. 2011)). A court may not dismiss an otherwise sufficient indictment based on "a determination of facts that should have been developed at trial." *United States v. Engle,* 676 F.3d 405, 415 (4th Cir. 2012). Stated differently, Underwood could only have succeeded on a motion to dismiss the indictment if the allegations in the indictment, when taken as true, "would not state an offense." *United States v. Vandevere*, No. 1:19-CR-63-MOC, 2019 WL 4439483, at *1 (W.D.N.C. Sept. 16, 2019).

The indictment in this case included a plain and concise recitation of facts describing when and where the alleged offense took place, that the offense was committed using a facility of interstate commerce, and that Underwood attempted to persuade, induce, entice, or coerce a minor child to engage in sexual activity, either for commerce or in violation of criminal law. (ECF No. 22). The indictment included the specific federal statute that applied to Underwood's charge. Consequently, the indictment contained the essential elements of the crime charged and set forth the date and location parameters, enabling Underwood to assess the applicability of a double jeopardy bar.

Given that the indictment was sufficient, Johnson had no legitimate argument to assert in a motion to dismiss. Johnson recognized that "there was no legal basis to make a pretrial challenge to the indictment." (ECF No. 74 at 5). Because it is not ineffective assistance for counsel to fail to file a frivolous motion, the undersigned **FINDS** that Underwood's motion to vacate on this ground is entirely without merit. *United States v. Morris*, No. 3:13-CR-67, 2015 WL 3919119, at *3 (E.D. Va. June 25, 2015) (citing *Canda v. United States,* No. 1:07CR356, 2010 WL 722770, at *4 (E.D. Va. Feb. 26, 2010)).

### D.  Counsel's Failure to Advise

Similarly, Johnson was not ineffective by failing to discuss with Underwood defenses that had no reasonable likelihood of success. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, [h]e may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel 'was not within the range of competence demanded of attorneys in criminal cases.'" *Carruthers v. Warden of Lee Correctional Institution,* No. 6:18-1977-RMG, 2019 WL 4015121, at *4 (D. S. C. Aug. 26, 2019) (quoting *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973)).

As Johnson explains in his affidavit, he discussed with Underwood possible defenses to the enticement charge. (ECF No. 74 at 7). He advised Underwood that he would argue at trial that Underwood's "words and conduct never crossed the line from a dangerous curiosity to an attempted enticement," although Johnson maintained that such a defense was a long shot. (*Id.*). Nonetheless, at the outset, Johnson encouraged Underwood to proceed to trial, because Underwood had nothing to lose and everything to gain. Johnson's assessment of the case changed, however, when the United States offered a plea deal and provided notice that if Underwood did not accept the deal, the United States would seek a superseding indictment containing three additional charges, two of which carried mandatory minimum sentences of fifteen years in prison—five more years than Underwood was facing with the enticement charge. Having thoroughly reviewed the massive discovery produced by the United States, Johnson was convinced that  Underwood's chances of success at trial were minimal. For that reason, he advised Underwood that the plea deal was in his best interests. (*Id.* at 4-5).

Underwood has not offered any evidence to meet his burden of demonstrating ineffective assistance of counsel. To the contrary, the three defenses described by Underwood as "strong" were, in reality, flimsy at best. Moreover, a superseding indictment exposed Underwood to a prison sentence that was at least 50% longer than the sentence Johnson correctly deduced Underwood would receive. In light of the text messages and statements made over the telephone to undercover officers pretending to be Jenn and Abby, as well as the text messages on Underwood's cellphone revealing his efforts to locate underage girls for the purpose of sexual activity, the advice offered by Johnson was eminently sensible and well within the standards of competent professional assistance. Therefore, the undersigned **FINDS** that Underwood's motion to vacate on this ground is not supported by the record.

### E.  *Underwood's Guilty Plea*

Underwood attempts to argue that he was not interested in having sex with a young girl and was not actively seeking an underage sexual partner. (ECF No. 65 at 23-24). However, the facts as set forth in the PSR tell a much different story. Furthermore, despite his initial reticence at the plea hearing to admit what he had done, Underwood did eventually acknowledge his illegal actions. (ECF No. 62). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should ... dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005)**.** Underwood's assertions that he is innocent and his attorney was ineffective by advising him to plead guilty are absolutely contrary to his testimony at the plea hearing where he stated that he was pleading guilty to the crime contained in the indictment, because he was in fact guilty of

22

attempting to entice, induce, persuade, or coerce a thirteen-year-old child into having sexual relations with him. (ECF No. 62 at 42, 44). Underwood also expressly affirmed that he had gone over the stipulation of facts contained in his plea agreement with his attorney and the facts contained therein were accurate. (*Id.* at 17). The Sentencing Court methodically reviewed the provisions of the plea agreement, the elements of the charge, and the effect of the stipulation of facts, specifically asked Underwood if he understood all of the terms and conditions of the agreement and the facts set forth in the stipulation. Underwood replied in the affirmative to all of the questions posed by the Sentencing Court, specifically confirming that he understood the stipulation of facts and had signed the stipulation. (*Id.* at 11-24). The Sentencing Court advised Underwood of the rights he would be waiving by entering a guilty plea, and Underwood expressed his understanding. (*Id.* at 26-32). Underwood acknowledged that he was entering into the guilty plea voluntarily, and that he had not been coerced into doing so. (*Id.* at 32-34). He also confirmed that he was satisfied with his attorney's performance. (*Id.* at 33). Finally, Underwood admitted in his own words that (1) he offered money to Jenn to have her thirteen-year-old niece participate in "sexual activity and stuff;" (2) he spoke directly with Abby on the phone and discussed her sexual experience and her desire to have an "older boyfriend;" and (3) he implied in those conversations that he would give Abby money in exchange for sexual activity. (*Id.* at 37-40). Underwood's sworn statements admitting guilt were corroborated by the text messages taken from his cellphone.

It is axiomatic that innocence is a defense to an alleged crime, and this defense is well-known to most people, even those who are not trained as lawyers. Underwood was given multiple opportunities by the Sentencing Court to proclaim his innocence, but Underwood did not. The fact that he did not want to admit his guilt, or that he changed

his mind about pleading guilty after beginning to serve his sentence, is not a basis for vacating his conviction. "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Attorney Gen.*, 956 F.2d 1290, 1299 (4th Cir. 1992).

Accordingly, the undersigned **FINDS** that Underwood fails to meet his burden of proof in regard to his *Strickland* claim and offers no evidence that he would have proceeded to trial on the strength of three unavailing defenses; particularly, given Underwood's statements at the plea hearing.

## IV.   Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 64), be **DENIED;** Respondent's request for dismissal (ECF No. 83), be **GRANTED**; and that this civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District

Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Copenhaver, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED**: November 4, 2019

Cheryl A. Eifert
United States Magistrate Judge